241 So.2d 174 (1970)
Lloyd N. ANDERSON, Appellant,
v.
TRADE WINDS ENTERPRISES CORP., a Florida Corporation, Walter A. Bouillet, Douglas E. Evans, John R. Howell, Gerald L. DuChene and Robert W. Erickson, Individually, Appellees.
No. 69-349.
District Court of Appeal of Florida, Fourth District.
November 25, 1970.
*175 Warren O. Windle, Fort Lauderdale, for appellant.
Carl V. Wisner, Jr., Fort Lauderdale, for appellee Trade Winds Enterprises Corp.
David L. Kline, of Abrams, Anton, Robbins, Resnick & Burke, Hollywood, for appellees.
REED, Judge.
The plaintiff, Lloyd N. Anderson, filed a complaint in the Broward County Court of Record on 13 June 1968 against Trade Winds Enterprises Corp., a Florida corporation, and Walter A. Bouillet, Douglas E. Evans, John R. Howell, Gerald L. DuChene, and Robert W. Erickson. Bouillet was apparently not served and did not appear. Each of the other defendants filed an answer.
The complaint alleged that the individual defendants as guarantors and the corporate defendant as maker of a note were indebted to the plaintiff on a note a copy of which was attached to the complaint. The defendants Erickson, Evans, Howell, and DuChene filed answers in which each admitted that they had signed the guaranty, but otherwise denied liability. The defendant Trade Winds Enterprises Corp. admitted executing the note.
The cause was tried on 26 February 1969 before the trial judge without a jury. The trial judge found that the promissory note was the property of the plaintiff and that the plaintiff had proven his complaint against defendant Trade Winds Enterprises Corp., but had not proven the material allegations of his complaint against defendants Evans, Howell, DuChene, and Erickson. Upon these findings the trial judge entered a judgment for the plaintiff in the amount of $6,244.45 plus interest and costs against defendant Trade Winds Enterprises Corp., but ordered that the plaintiff take nothing from defendants Evans, Howell, DuChene and Erickson. The appeal is from that judgment.
The issue presented by this appeal is whether or not the trial judge committed error in entering the final judgment in favor of the individual defendants Evans, Howell, DuChene and Erickson.
The plaintiff who was the former president of Anderson Meat & Provisions, Inc., testified that he sold the capital stock of Anderson Meat & Provisions, Inc., on 4 December 1965 to Wilson & Co. Inc. The plaintiff testified that he retained the note in question as his own and that the amount due thereon was $6,244.65. Richard Gruver a managing agent for Wilson & Co., Inc., and the vice-president of Anderson Meat & Provisions, Inc., after its sale to Wilson & Co., Inc., testified that he endorsed the note on behalf of Anderson Meat & Provisions, Inc., to Mr. Anderson individually.
The trial court took judicial notice without objection and at the request of the individual defendants of all proceedings in a prior suit (Anderson Meat & Provisions, Inc. v. Trade Winds Enterprises Corp., et *176 al, Case No. 67-330, Ferris) on the note brought in the same court by Anderson Meat & Provisions, Inc., against the same defendants. The entire file in the earlier case, including a transcript of testimony, was made a part of the record in the present case. Certain parts thereof may, therefore, be considered as relevant to the issue here. The prior suit was commenced on 14 February 1966. Service of process on the various defendants did not take place, however, until December of 1966 and February of 1967. At the trial of the cause a jury was waived and evidence was presented before the court. Mr. Anderson, the plaintiff here, testified in the prior suit that the note was given to liquidate an open account owed by the defendant Trade Winds Enterprises Corp. to Anderson Meat & Provisions, Inc. Mr. Anderson further testified that the payments called for in the note were not met pursuant to the terms of the note. The last payment on the note was made 17 May 1966. Even though the prior suit was brought in the name of Anderson Meat & Provisions, Inc., Mr. Anderson testified that he owned the note and, because of this testimony, at the conclusion of the hearing, the trial court found as a matter of fact that the note belonged to Mr. Anderson and not to the corporate plaintiff. On the basis of this finding, judgment was entered for the defendants.
Following the abortive suit by Anderson Meat & Provisions, Inc., Mr. Anderson's attorney obtained an endorsement of the note from Anderson Meat & Provisions, Inc., to Mr. Anderson individually and on behalf of Mr. Anderson filed the present suit against the same defendants.
At the evidentiary hearing in the present case, the defendants Evans, Howell, Erickson, and DuChene, all indicated that they never knew that the note was in default until February of 1967 when Mr. Evans was served with a summons in the first suit. Each testified that he signed the guarantee only for the purpose of guaranteeing the collection of the note.
In their brief the appellees pose several theories upon which they think the judgment of the trial court may be affirmed. The first contention is that the judgment in the prior case is res judicata as to the issues in the present case and consequently bars the present litigation. It is immediately apparent that this is not a valid contention. The only issues that were litigated or which could have been litigated in the prior suit related to the liability of the appellees to Anderson Meat & Provisions, Inc. The matter of their liability to the present plaintiff, Lloyd N. Anderson, was not within the scope of the pleadings in the prior suit and was not in fact litigated in the prior suit. This being the case it is obvious that neither the bar of res judicata nor estoppel by judgment is applicable. Jackson Grain Co. v. Lee, 1942, 150 Fla. 232, 7 So.2d 143; Caldwell, for Use and Benefit of Hawkins v. Massachusetts Bonding & Insurance Co., 1947, 158 Fla. 677, 29 So.2d 694; Shirley v. Shirley, Fla.App. 1958, 100 So.2d 450; Hinchee v. Fisher, Fla. 1957, 93 So.2d 351.
Next the appellees argue that the attorney for Mr. Anderson, the plaintiff, in acquiring the endorsement of Anderson Meat & Provisions, Inc., on the note and thereafter bringing the present suit was guilty of champerty and maintenance and, therefore, says the appellees, the suit should be dismissed as to all defendants. The appellees provide us with the following definitions of champerty and maintenance:
(1) Maintenance:
"* * * maintenance is an officious intermeddling in a suit which in no way belongs to the intermeddler by maintaining or assisting either party to the action, with money or otherwise, to prosecute or defend it. In other words, it is the intermeddling in a suit by a stranger, one having no privity or concern in the subject matter and standing in no relation of duty to the suitor. 14 Am.Jur.2d 843."

*177 (2) Champerty:
"Champerty is a species of maintenance. It is defined as a bargain by a champertor with a plaintiff or defendant for a portion of the matter involved in a suit in case of a successful termination of the action, which the champertor undertakes to maintain or carry on at his own expense. 14 Am.Jur.2d 843-4."
The appellees state that although "our" fact situation does not sit on all-fours with these definitions it comes close enough so that it should be classified as champerty or maintenance. Unless we have missed something very fundamental here, we cannot see how the facts of this case even remotely resemble maintenance or champerty. In the first place there was obviously no officious intermeddling by anyone in a law suit. In the second place there was no bargaining between any person not involved in a law suit to acquire an interest in a matter in litigation. The efforts of the plaintiff's attorney to secure an endorsement of the note to the plaintiff were undertaken after the prior suit terminated and were simply in recognition of the findings of fact therein. The attorney and plaintiff would have been remiss had they done otherwise.
Next the individual appellees contend that their guaranty was a contract only to stand liable in the event the plaintiff through the exercise of due diligence could not collect the debt from the maker of the note, Trade Winds Enterprises Corp. They base this contention on their self-serving testimony that when they executed the guaranty they had the understanding that they were merely guaranteeing collection. They contend that the plaintiff did not exercise due diligence in his efforts to collect the note from the maker and, this default, they say, discharged them.
The guarantors were partners who owned a substantial interest in the maker of the note, Trade Winds Enterprises Corp.
Their guaranty agreement reads as follows:
"In the event of failure on the part of The Trade Winds Enterprises Corporation to meet the conditions of the above note, payment of this note is further guaranteed by The Four Saints, Walter A. Bouillet, Douglas E. Evans, John R. Howell, Gerald L. DuChene and Robert W. Erickson."
The law recognizes a distinction between an absolute guarantee and a conditional guarantee. One who undertakes an absolute guarantee of payment by another becomes liable immediately upon default in payment by the other. One who undertakes to conditionally guarantee another's payment does not become liable until the occurrence of the conditions. Scott v. City of Tampa, 1947, 158 Fla. 712, 30 So.2d 300, 302; Fegley v. Jennings, 1902, 44 Fla. 203, 32 So. 873. Whether a contract of guaranty is absolute or conditional depends on the intent of the parties as expressed in their contract. If a written contract in unambiguous terms expresses an unconditional guarantee, then the guaranty is absolute and the guarantor's liability cannot be limited or qualified by parole evidence as to a prior or contemporary understanding. Bryant v. Food Machinery And Chemical Corporation Niagara Chemical Division, Fla.App. 1961, 130 So.2d 132, 134, 135. In our opinion, the language of the present written contract is not legally ambiguous and, as a matter of law, creates an absolute guaranty of payment.
Where the guaranty is absolute, the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors. Scott v. City of Tampa, supra; A & T Motors Inc. v. Roemelmeyer, Fla.App. 1963, 158 So.2d 567; Quarngesser v. Appliance Buyers Credit Corp., Fla.App. 1966, 187 So.2d 662, 665. Hence, we reject the contention of the individual appellees that they were discharged by the plaintiff's *178 failure to use due diligence to collect the note from the maker. While the 1965 guaranty contract is not controlled by the Uniform Commercial Code, the Uniform Commercial Code has adopted the aforementioned common law rules relating to guaranty contracts, and the code's application to this case would produce the same result we reach. See Section 673.3-416, F.S. 1969, F.S.A.
Appellees also contend that they received no notice that the note was in default until sometime in February of 1967. Even if this be true, it is no defense to the plaintiff's claim against the guarantors where the guaranty contract does not require that the guarantee give notice of default. Fegley v. Jennings and Bryant v. Food Machinery And Chemical Corporation Niagara Chemical Division, supra. Where one undertakes an absolute guaranty of payment, he should monitor the principal's performance and not seek to impose this responsibility on the guarantee, unless the same is expressly provided for in the contract.
The individual appellees' answers plead that their liability as guarantors was discharged by extensions of time for payment which the holder of the note accorded the maker. The evidence indicates that the note went into default when the first installment was due. Thereafter, instead of bringing immediate suit on the note, partial payments were accepted. The evidence does not indicate, however, that the holder and maker of the note legally modified the latter's obligation under the note. The extensions of time were gratuitous indulgences to avoid litigation. Such extensions, therefore, did not affect the guarantors' rights against the maker of the note and, therefore, did not discharge their liability as guarantors. Clark v. United Grocery Co., 1915, 69 Fla. 624, 68 So. 766; Holcombe v. Solinger & Sons Co., 5 Cir.1956, 238 F.2d 495; Quarngesser v. Appliance Buyers Credit Corp., supra.
One other point is worth mentioning. The answer of the guarantors denies consideration of their obligation under the guaranty agreement. The evidence in the case indicates, however, that the note was given by Trade Winds Enterprises Corp. in liquidation of an overdue account for meat which it had bought from Anderson Meat & Provisions, Inc. Thus, as between Anderson Meat and Trade Winds, there was good consideration for the note. This being the case, there was also good consideration for the obligation of the guarantors because the consideration for the note is legal consideration for the obligation of the guarantors. Jones v. McConnon & Co., 1930, 100 Fla. 1158, 130 So. 760.
Our examination of the record reveals no basis for the exemption of the guarantors from liability. Therefore, that portion of the final judgment which discharges the guarantors is reversed and the trial judge is directed on remand to enter judgment against the guarantors, jointly and severally, for the amount found owed on the note by the principal debtor, Trade Winds Enterprises Corp. Otherwise, the final judgment is affirmed.
Affirmed in part; reversed in part.
WALDEN and McCAIN, JJ., concur.