DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHIR BENSUSAN,**
Appellant,

v.

**DESIGN ENGINEERING GROUP, LLC,**
Appellee.

No. 4D2024-1340

[December 3, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mark A. Speiser, Judge; L.T. Case No. CACE21004742.

John J. Shahady of Shahady & Wurtenberger, P.A., Fort Lauderdale, and Bart A. Houston and Alexander G. Lewitt of Houston Roderman, Fort Lauderdale, for appellant.

Wayne H. Schwartz of Lee & Amtzis, P.L., Boca Raton, for appellee.

SHEPHERD, J.

This is an appeal from a final judgment awarding 92% of a contractual retainage to appellee Design Engineering Group, LLC ("DEG") pursuant to the terms of supplemental construction contracts. We affirm in part and reverse in part, holding that appellant Shir Bensusan is liable on an unconditional and absolute guaranty, and that DEG is entitled to recover on the retainage and statutory interest, but is not entitled to the 10% interest awarded by the trial court.

DEG, a subcontractor on a construction project, recorded a construction lien on March 10, 2016, on real property owned by property developer Costa Hollywood Property Owner, LLC ("Costa"), after Costa had failed to timely pay for work performed. The lien amount was $1,011,755.68, including a $176,751.91 retainage. Retainage is an amount withheld from progress payments.

Based on work stoppage, DEG and Costa entered supplemental contracts on June 21, 2016, for the continued construction of the project. The purpose, as stated in the "Agreement" and "Payment and Completion

Agreement," was to induce DEG to resume work on the project. In return, Costa promised to timely pay for labor and materials provided. Moses Bensusan (Costa's principal) and his wife, appellant Shir Bensusan, each signed the Agreement as guarantors. All parties agreed that at the time the new contracts were entered, DEG had earned $176,751.91 in retainage. DEG resumed work and Costa, through its general contractor, Beauchamp, failed to pay DEG. DEG sought relief from the guarantors for the retainage.

Shir Bensusan first claims the trial court reversibly erred by denying her motion to continue trial. On that issue, we affirm without discussion.

Shir Bensusan next claims the trial court abused its discretion in finding DEG was entitled to recover 92% of the retainage.[1] We affirm the trial court's ruling because the guaranty's language and other trial evidence supports the conclusion that the Bensusans had signed an unconditional and absolute guaranty.

"A trial court's interpretation of a contract is reviewed de novo." *Marshall v. MacWilliam*, 391 So. 3d 446, 450 (Fla. 4th DCA 2024). However, the appellate court is bound by the trial court's findings of fact in a case where competent, substantial evidence supports the findings. *See Richardson v. Everbank*, 152 So. 3d 1282, 1287–88 (Fla. 4th DCA 2015) ("[T]he appellate court does not re-weigh the evidence or . . . . assess whether it is possible to recite contradictory record evidence which supports arguments rejected below, nor does it retry the case or substitute its judgment for the trial court's on factual matters supported by competent, substantial evidence[.]") (quoting *Lahodik v. Lahodik*, 969 So. 2d 533, 535 (Fla. 1st DCA 2007)).

At trial, Frank Gatto ("Gatto"), DEG's owner and officer, testified and presented exhibits proving that Shir Bensusan had executed an absolute and unconditional guaranty in DEG's favor for payment of contractual retainage "already earned" of $176,751.91. The trial court found the Agreement entered on June 21, 2016, was an enforceable contract with an unconditional guaranty.

"As to an absolute guaranty, the guarantor becomes liable immediately upon default in payment by another, whereas under a conditional guaranty, the guarantor does not become liable until the occurrence of

---

[1] DEG did not cross-appeal the trial court's failure to award the additional 8% of the retainage.

certain conditions." *Fort Plantation Invs., LLC v. Ironstone Bank*, 85 So. 3d 1169, 1171 (Fla. 5th DCA 2012).

> If a written contract in unambiguous terms expresses an unconditional guarantee, then the guaranty is absolute . . . . *Where the guaranty is absolute, the guarantor becomes liable upon non-payment by the principal,* and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors.

*Id.* (emphasis added) (quoting *Anderson v. Trade Winds Enters., Corp.*, 241 So. 2d 174, 177 (Fla. 4th DCA 1970)).

The guaranty contained in Section 3 of the Agreement states, in pertinent part:

> (c) Moses Bensusan and his wife, Shir Bensusan (collectively "Guarantor"), guarantee the Retainage upon the following terms:
>
> > (i) Guarantor unconditionally, absolutely and irrevocably guarantees to DEG the payment or the Retainage if not timely paid by Costa to DEG in accordance with the terms of the Payment and Completion Agreement and the Subordination Agreement.
> >
> > (ii) Guarantor waives diligence, presentment, protest, demand for payment and notice of default or nonpayment to or upon Guarantor with respect to the Retainage. The liability of Guarantor under this Agreement shall be direct and immediate and not conditional or contingent upon the pursuit or exhaustion of any remedies against Costa. *Guarantor understands and agrees that this Guaranty shall be construed as a continuing, absolute and unconditional guaranty of payment without regard to any circumstance whatsoever which constitutes. or might be construed to constitute, an equitable or legal discharge of Costa for the Retainage, or of Guarantor under this Guaranty, in bankruptcy or in any other instance, except for payment in full of the Retainage.* When pursuing its rights and remedies against any Guarantor, DEG may, but shall be under no obligation to, pursue such rights and remedies as it may have against Costa and any failure

3

by DEG to do so does not relieve Guarantor at any liability, and shall not impair or effect the rights and remedies of DEG against Guarantor. This Guaranty shall remain in full force and effect and be binding in accordance with and to the extent of its terms upon Guarantor until the earlier of (i) the date upon which the Retainage is paid in full by Costa, or (ii) the date upon which Guarantor's obligations under this Guaranty to pay the Retainage is paid in full. . . .

(Emphasis added).

Shir Bensusan claims the trial court improperly interpreted the contracts in awarding final judgment to DEG because the project was not completed. However, in reviewing a contract's terms, we are "bound by the plain meaning of the contract's text." *Allstate Ins. Co. v. Revival Chiropractic, LLC*, 385 So. 3d 107, 113 (Fla. 2024) (quoting *MRI Assocs. of Tampa, Inc. v. State Farm Mut. Auto. Ins. Co.*, 334 So. 3d 577, 583 (Fla. 2021)). "Provisions in [a contract's text] cannot be viewed in isolation from the full textual context of which they are a part." *Id.* Instead, "proper interpretation requires consideration of 'the entire text, in view of its structure and of the physical and logical relation of its many parts.'" *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)).

The Payment and Completion Agreement, Section 4, states in part: "Costa will pay Beauchamp and Beauchamp will then pay [DEG] on all payment applications dated after March 31, 2016 within ten days of receipt. No retainage will be withheld on these applications." At trial, Gatto testified that Costa had obtained a $70 million loan. Under the agreements, DEG was entitled to monthly payments or draws based on labor and materials provided and was promised that the previously earned retainage would be paid. After the $70 million loan was funded, Gatto and his crew of approximately 100 construction workers resumed work on the project. DEG worked for 30 days and then submitted a bill to Costa. DEG waited ten days, gave Costa a few days of grace, and then walked off the job when payment was not forthcoming. Gatto testified that DEG completed 92% of the project.

In sum, the guaranty's unconditional language supports the trial court's award.

4

However, we reverse the trial court's award of 10% interest on the amount awarded. The Agreement's Section 3(a), which provides for 10% interest, is applicable only to the agreement between DEG and Costa. DEG is, however, entitled to statutory pre-judgment and post-judgment interest from Shir Bensusan. "[I]f a plaintiff establishes that he sustained out-of-pocket loss, prejudgment interest must be awarded from the date of the loss. The trial court has no discretion regarding awarding prejudgment interest and must do so applying the statutory rate of interest in effect at the time the interest accrues." *Sterling Vills. of Palm Beach Lakes Condo. Ass'n, Inc. v. Lacroze*, 255 So. 3d 870, 872 (Fla. 4th DCA 2018) (quoting *Summerton v. Mamele*, 711 So. 2d 131, 133 (Fla. 5th DCA 1998)).

*Affirmed in part, reversed in part, and remanded with instructions.*

GROSS and FORST, JJ., concur.

\* \* \*

**Not final until disposition of timely-filed motion for rehearing.**